UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------------------X
STEYCY HONORES, on behalf of herself and others similarly situated,

Plaintiff,

-against-

52 LOUNGE LLC d/b/a 52 LOUNGE BAR & RESTAURANT, RG ENTERPRISES ENTERTAINMENT INC. d/b/a THERAPY LOUNGE RESTAURANT & SPORT BAR, 7100 BERGENLINE LLC d/b/a COPACABANA NITE CLUB and ROBERT GUZMAN and BERKIS GUZMAN, individually,

Defendants.
---------------------------------------------------------------------X

**COMPLAINT**

**CLASS ACTION**

**FLSA COLLECTIVE ACTION**

Plaintiff Steycy Honores, ("Plaintiff" or "Honores"), individually and on behalf of all other similarly situated current and former employees, by and through her attorneys, The Law Offices of Jacob Aronauer, brings this action against Defendants, 52 Lounge LLC d/b/a 52 Lounge Bar & Restaurant ("52 Lounge"), RG Enterprises Entertainment Inc. d/b/a Therapy Lounge Restaurant & Sport Bar ("RG Enterprises"), 7100 Bergenline LLC d/b/a Copacabana Nite Club ("7100 Bergenline), and Robert Guzman ("R. Guzman"), and Berkis Guzman ( B. Guzman) individually, (collectively "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil action brought by Plaintiff on behalf of herself and all similarly situated cashiers ("Cashiers"), bartenders ("Bartenders") and servers ("Servers") who worked for Defendants to recover minimum wage and overtime compensation owed to them pursuant to the Fair Labor Standards Act ("FLSA"), the New Jersey Wage and Hour Law N.J.S.A. 34:11-56(a) et

seq., (“NJWHL”) and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4 et seq., (“NJWPL”), respectively.

2. Plaintiff also brings individual and class claims under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et seq., for sexual harassment and her unlawful termination, and also under the under New Jersey common law for negligence and emotional distress.

3. Plaintiff further asserts individual claims under New Jersey common law, including negligence and infliction of emotional distress, as well as claims under the New Jersey Licensed Alcoholic Beverage Server Fair Liability Act (“Dram Shop Act”) based on Defendants’ failure to ensure a safe and responsible alcohol service environment.

4. This action seeks to remedy Defendants' systemic exploitation of low-wage workers, particularly immigrant women, through wage theft, failure to maintain safe working conditions, and maintaining a workplace permeated by harassment and abuse.

5. Plaintiff also seeks injunctive and declaratory relief, as well as all damages allowed by law, including but not limited to unpaid wages, liquidated damages, compensatory and punitive damages, attorneys' fees, and costs.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it arises under the Fair Labor Standards Act (the “FLSA”), 29 U.S.C. § 201 et seq.

7. This Court has supplemental jurisdiction over Plaintiff’s related state law claims pursuant to 28 U.S.C. § 1367(a).

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

## THE PARTIES

**Plaintiff Honores**

9. Plaintiff Honores is and was at all times relevant hereto an adult residing in Hudson County, State of New Jersey.

10. From on or about April 14, 2024 until on or about September 6, 2024, Plaintiff worked for Defendants as a Cashier and then as a Bartender.

11. Honores is a covered employee within the meaning of the FLSA, NJWHL, and NJWPL.

12. Plaintiff is also a person aggrieved within the meaning of NJLAD, as she was subjected to unlawful sexual harassment and a hostile work environment which culminated in her unlawful termination.

**Defendant 52 Lounge LLC.**

13. Defendant 52 Lounge is a New Jersey limited liability company with its principal place of business at 5207 Bergenline Ave, West New York, NJ 07093.

14. At all times relevant, it was an enterprise engaged in interstate commerce within the meaning of the FLSA and employed similarly situated employees.

15. R. Guzman is the owner of 52 Lounge.

16. R. Guzman owns and maintains control, oversight, and direction over 52 Lounge.

17. On information and belief, Defendant 52 Lounge (1) engages in commerce or in the handling, selling, or otherwise working on goods or materials that have been moved in or

produced for commerce by any person; and (2) has had an annual gross volume of sales made or business done in an amount exceeding $500,000 at all times relevant to this action.

18. Defendant 52 Lounge employed similarly situated employees of the FLSA Collective at all times relevant.

**<u>RG Enterprises Entertainment Inc.</u>**

19. Defendant RG Enterprises is a New Jersey corporation with its principal place of business at 2803 Bergenline Ave, Union City, NJ 07087.

20. At all times relevant, it was an enterprise engaged in interstate commerce within the meaning of the FLSA and employed similarly situated employees.

21. R. Guzman is the owner of RG Enterprises.

22. R. Guzman owns and maintains control, oversight, and direction over RG Enterprises.

23. On information and belief, Defendant RG Enterprises (1) engages in commerce or in the handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) has had an annual gross volume of sales made or business done in an amount exceeding $500,000 at all times relevant to this action.

24. Defendant RG Enterprises employed similarly situated employees of the FLSA Collective at all times relevant.

**<u>7100 Bergenline LLC.</u>**

25. Defendant 7100 Bergenline is a New Jersey limited liability company with its principal place of business at 7100 Bergenline Ave, North Bergen, NJ 07047.

26. At all times relevant, it was an enterprise engaged in interstate commerce within the meaning of the FLSA and employed similarly situated employees.

27. On information and belief, B. Guzman is the registered agent for 7100 Bergenline.

28. On information and belief, R. Guzman is the owner of 7100 Bergenline.

29. On information and belief, R. Guzman owns and maintains control, oversight, and direction over 7100 Bergenline.

30. On information and belief, Defendant 7100 Bergenline (1) engages in commerce or in the handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) has had an annual gross volume of sales made or business done in an amount exceeding $500,000 at all times relevant to this action.

31. Defendant 7100 Bergenline employed similarly situated employees of the FLSA Collective at all times relevant.

**Defendant Robert Guzman**

32. Defendant R. Guzman is a person engaged in business in Hudson County, who is sued individually in his capacity as an owner, officer and/or agent of 52 Lounge, RG Enterprises, and 7100 Bergenline.

33. Defendant R. Guzman exercises control over all three entities to be considered Plaintiff's employer under the FLSA, NJWHL, and NJWPL, and at all times material hereto, said Defendant had the authority to hire and fire employees, set employee schedules and conditions of employment, determine rates and methods of payment to employees, and maintain employment records.

34. Defendant R. Guzman employed Plaintiff and similarly situated employees at all times relevant.

35. Defendant R. Guzman had substantial and operational control over Plaintiff's working conditions and the practices alleged herein.

**<u>Defendant Berkis Guzman</u>**

36. Defendant B. Guzman is a person engaged in business in Hudson County, who is sued individually in her capacity as an owner, officer and/or agent of 7100 Bergenline.

37. Defendant B. Guzman exercises control over all three entities to be considered Plaintiff's employer under the FLSA, NJWHL, and NJWPL, and at all times material hereto said Defendant had the authority to hire and fire employees, set employee schedules and conditions of employment, determine rates and methods of payment to employees, and maintain employment records.

38. Defendant B. Guzman employed Plaintiff and similarly situated employees at all times relevant.

39. Defendant B. Guzman had substantial and operational control over Plaintiff's working conditions and the practices alleged herein.

## FLSA COLLECTIVE ACTION ALLEGATIONS

40. The claims in this Complaint arising out of the FLSA are brought by Plaintiff on behalf of herself and other similarly situated employees who are current and former Cashiers, Bartenders and Servers of Defendants since the date three years prior to the filing of this Complaint, who elect to opt-in to this action (the "FLSA Collective").

41. Presently, the FLSA Collective consists of approximately 45 similarly situated current and former Cashiers, Bartenders and Servers of Defendants who have been victims of Defendants' common policy and practices that have violated their rights under the FLSA, *inter alia*, willfully denying them overtime wages.

42. As part of its regular business practice, Defendants have intentionally, willfully and repeatedly harmed Plaintiff and the FLSA Collective by engaging in a pattern and/or policy of violating the FLSA. This pattern and/or policy includes, *inter alia*, the following:

i. failing to pay Cashiers, Bartenders and Servers the applicable overtime rate for all time worked in excess of 40 hours per week;

43. Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation. Defendants' unlawful conduct has been intentional, willful and in bad faith, and has caused significant damage to Plaintiff and the FLSA Collective.

44. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join in the present action. Those similarly situated employees are known to Defendants and are readily identifiable and locatable through their records. These similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

45. The FLSA requires that employers pay all employees at least one and one-half times the employee's wage for all hours worked in excess of 40 hours during any workweek, unless they are exempt from coverage.

46. Defendants failed to compensate Plaintiff and members of the FLSA Collective at one and one-half times the employees' wage for all hours worked in excess of 40 during any workweek. The exact accounting of such discrepancy can only be determined upon completion of discovery.

47. Plaintiff and members of the FLSA Collective were not given notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal or lodging allowances; the regular pay day designated by the employer in accordance with the FLSA; and anything otherwise required by law.

48. Defendants paid Plaintiff and members of the FLSA Collective wages without any accompanying statement listing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; the regular hourly rate or rates of pay; the overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages in accordance with the FLSA.

## CLASS ALLEGATIONS

49. Plaintiff Steycy Honores brings this action on her own behalf and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other similarly situated individuals who were employed by Defendants in the State of New Jersey, and who were subjected to Defendants' unlawful wage, workplace, and discriminatory practices during the relevant statutory periods.

50. Plaintiff Honores brings her NJWHL claims on behalf of all persons who worked for Defendants as Cashiers, Bartenders and Servers any time after August 25, 2019 to entry of judgment in this case (the "Class" or "Class Members," and the "Class Period," respectively) (herein after unless otherwise specified the "Class" refers to all named Plaintiff and the putative class).

51. The members of the proposed Class are so numerous that joinder of all members is impracticable. Upon information and belief, the proposed Class includes at least 90 individuals who worked for Defendants at various times within the relevant period, including but not limited to Servers, Bartenders and Cashiers.

52. There are questions of law and fact common to the Class, including but not limited to:

i. Whether Defendants failed to pay Class members minimum wage and overtime compensation in violation of the NJWHL;

ii. Whether Defendants failed to provide proper wage statements, maintain accurate payroll records, and comply with the NJWPL;

iii. Whether Defendants subjected Plaintiff and the Class to a hostile work environment and/or sexual harassment in violation of the NJLAD.

53. Plaintiff's claims are typical of the claims of the proposed Class because she was subjected to the same wage violations and unlawful policies and practices as other Class members.

54. Plaintiff will fairly and adequately protect the interests of the proposed Class. Plaintiff has no interests that are adverse to or in conflict with those of other Class members. Plaintiff has retained competent counsel experienced in class action litigation and employment law.

55. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The individual joinder of all Class members is impracticable. Class treatment will allow those similarly situated persons to litigate their claims in the most efficient and economical manner, avoiding unnecessary duplication of litigation. The class mechanism provides the benefit of uniform adjudication, economies of scale, and comprehensive supervision by a single court.

56. The questions of law and fact common to the Class predominate over any questions affecting only individual members. The common questions of law and fact identified above are central to the litigation and can be resolved on a class-wide basis.

57. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## STATEMENT OF FACTS

**Defendants' General Employment Practices**

58. At all relevant times, Defendants owned, operated, and/or controlled nightlife establishments in the State of New Jersey where Plaintiff Honores and similarly situated employees worked.

59. During the relevant time period, Defendants employed dozens of workers in various front-of-house roles including, but not limited to, Servers, Bartenders, and Cashiers.

60. Defendants maintained common ownership, operation, and control over the business enterprise.

61. The individual Defendants exercised direct oversight of day-to-day operations, including hiring, firing, scheduling, compensation, and workplace conduct policies.

62. Plaintiff and Class members were paid primarily in cash without proper wage statements or itemization of hours worked, pay rates, or deductions.

63. Defendants required Plaintiff and other employees to work in excess of 40 hours per week but failed to pay proper overtime wages as mandated by the FLSA and NJWHL.

64. Plaintiff was victim of Defendants' common policy and practices, which violated their rights under the FLSA and NJWHL by, *inter alia*, not paying her for all hours worked and time and a half for work performed after 40 hours.

65. Defendants did not provide compliant wage statements as required under the NJWPL and failed to maintain accurate records of hours worked and wages paid.

66. Management routinely allowed patrons to sexually harass their employees including, but not limited to, verbal abuse, unwanted physical contact and other inappropriate conduct.

67. Despite being aware of repeated incidents of harassment and unsafe conditions, Defendants failed to take any reasonable steps to prevent, stop, or correct the ongoing harassment and dangerous conditions. This persistent inaction fostered an environment where escalating dangers to employees were foreseeable.

68. In fact, Defendants encouraged a workplace culture that promoted alcohol consumption by their staff, failed to monitor or control intoxicated patrons, and disregarded staff safety in violation of the New Jersey Dram Shop Act.

69. Upon information and belief, Defendants continue to operate under similar policies and practices, perpetuating violations of federal and state employment laws and placing other employees at risk.

**Plaintiff Honores and the Potential Class**

70. As noted earlier, from on or about April 2024 through September 6, 2024 Plaintiff was employed by Defendants as a Cashier and Bartender.

71. Plaintiff initially was hired as a Cashier.

72. Plaintiff rotated between three bar locations owned and operated by Defendants: 52 Lounge Bar & Restaurant in West New York, Therapy Lounge Restaurant & Sport Bar in Union City, and Copacabana Nite Club in North Bergen.

73. As a Cashier, Plaintiff was paid $12 an hour for all hours worked.

74. Plaintiff paid in cash.

75. Plaintiff typically worked six days per week, from 5:00 p.m. to approximately 2:30 a.m.

76. Plaintiff worked approximately 56 hours per week.

77. Employees who brought food were expected to eat in under 10 minutes and return to work immediately. Taking breaks during peak hours was strongly discouraged.

78. Defendants did not provide Plaintiff with any formal meal or rest breaks.

79. On September 6, 2024, while working at the 52 Lounge location, Plaintiff was asked by R. Guzman to work as a Bartender.

80. Bartenders are paid a flat rate of $60 per shift, regardless of the number of hours worked.

81. Bartenders were also paid $5 for each small beer and $10 for each large beer they consumed with a customer.

82. Servers are paid $50 per a nine-hour shift plus tips.

83. The salary of Servers does not change when they work 40 or more hours per week.

84. Cashiers are paid $12 an hour for all hours worked, including work performed after 40 hours.

85. Thus, for Plaintiff to earn even the equivalent of her $12 hourly wage as a Cashier, Plaintiff as a Bartender had to drink at least six beers with patrons during a single shift.

86. Thus, Defendants incentive structure encouraged Bartenders to drink alcohol throughout their shifts to make more than minimum wage.

87. Bartenders were not provided with any formal training. Responsibility for monitoring their condition and sobriety was informally delegated to the Cashier.

88. Throughout her employment, Plaintiff witnessed numerous instances in which patrons emboldened by alcohol and the lack of oversight acted inappropriately through sexually suggestive comments and gestures toward her and other female staff. These incidents were frequent as patrons could act with impunity.

89. On one occasion, when a male patron began flirting with Plaintiff and made her visibly uncomfortable, she reported the incident to R. Guzman. Instead of addressing the issue, R. Guzman told Plaintiff that she should "get used to it," explaining that customers often make such comments.

90. Plaintiff experienced additional incidents of harassment. On a different occasion, a customer slapped her buttocks while she was walking to the restroom. She reported the assault to R. Guzman, who again took no action.

91. On another occasion, a customer filmed Plaintiff without her consent while she was working. When she reported the behavior to R. Guzman, he dismissed her concern and instructed her to ignore it.

92. Plaintiff is also aware of similar incidents involving patrons and other Bartenders. Due to fear of retaliation, those employees did not report the behavior.

93. Defendants failed to implement any policies to prevent or address sexual harassment or protect employees from intoxicated or aggressive patrons.

94. As a result of the hostile work environment and Defendants' negligence, Plaintiff suffered sexual assault, severe emotional trauma, and economic harm.

95. Defendants knew or should have known that allowing and encouraging Bartenders to drink with male patrons created foreseeable risks of harassment, intoxication, and sexual violence.

96. Despite this knowledge, Defendants failed to implement any safety policies, training, or safeguards to protect workers, and instead continued practices that placed female employees at serious risk.

97. At the instruction of Defendant R. Guzman, Bartenders were required to notify the Cashier on duty each time a patron purchased them a beer. This system was used to track the number of beers consumed by the Bartender so that they could be paid $5 per beer consumed.

98. Defendant R. Guzman was present but failed to take any steps to ensure Plaintiff's safety or monitor her well-being.

99. On Plaintiff's first night as a Bartender, a known regular patron, Wilkins Marinez ("Marinez"), who visited the bar six days per week, bought Plaintiff multiple beers and offered her the final round of drinks before closing.

100. Plaintiff consumed between seven and nine beers.

101. Surveillance footage later showed Plaintiff visibly disoriented as she received her pay and exited the premises around 2:08 a.m.

102. Surveillance footage showed Marinez waiting inside his car, parked directly outside the lounge.

103. As Plaintiff exited the premises, Marinez appeared to call out to her or initiate a conversation.

104. Plaintiff initially approached Marinez's driver's side window and, after a brief pause, entered the car.

105. Through a subsequent police investigation, Plaintiff learned that she had been drugged with a homemade sedative by Marinez, in addition to the high volume of alcohol consumed.

106. A video recovered from Marinez's phone showed Plaintiff unconscious and in a vulnerable, unresponsive state.

107. The police also informed Plaintiff that surveillance footage showed Marinez briefly touching Plaintiff's glass while she stepped away to the restroom.

108. Plaintiff was sexually assaulted that night by Marinez. She required immediate medical attention and incurred significant costs related to emergency treatment and prescribed medications.

109. As a result of Marinez's action toward Plaintiff he is being prosecuted by the New Jersey District Attorney, indictment # 25-04-0591-I. The criminal case is pending.

110. Since Plaintiff received no financial support or health insurance from her employer, she was forced to seek outside assistance to cover the costs of her hospital stay and medications.

111. Plaintiff has since received psychological care funded by a charity organization.

**FIRST CAUSE OF ACTION**
**Unpaid Minimum Wages in Violation of New Jersey Wage and Hour Law**
**(On Behalf of Plaintiff and the Class)**

112. Plaintiff, on behalf of herself and the Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

113. At all times relevant to this action, Plaintiff and the Class were employed by Defendants within the meaning of the NJWHL.

114. Defendants failed to pay Plaintiff and the Class minimum wage for hours worked in violation of the NJWHL.

115. Through their knowing or intentional failure to pay Plaintiff and the Class minimum wages for hours worked, Defendants have willfully violated the NJWHL. N.J.S.A. 34:11-56(a) *et seq*, and the supporting New Jersey Division of Wage and Hour Compliance.

116. Due to Defendants' willful violations of the NJWHL, Plaintiff and the Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NJWHL, reasonable attorneys' fees, costs and pre-judgment and post-judgment interest.

**SECOND CAUSE OF ACTION**
**FLSA Overtime Violations, 29 U.S.C. §§ 201, *et seq.***
**(On Behalf of Plaintiff and the FLSA Collective)**

117. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

118. The FLSA Collective consists of all employees of Defendants in all three locations owned and operated by them.

119. Throughout the relevant time period, Plaintiff and the FLSA Collective regularly worked in excess of 40 hours per workweek.

120. At all relevant times throughout Plaintiff's employment, Defendants have operated under a policy of willfully failing and refusing to pay Plaintiff and the FLSA Collective one and one-half times the regular hourly rate of pay for all work in excess of 40 hours per workweek, and willfully failing to keep records required by the FLSA, even though Plaintiff and the FLSA Collective were entitled to receive overtime payments.

121. At all times relevant throughout Plaintiff's employment, Defendants willfully, regularly, and repeatedly failed to pay the required rate of one and one-half times her regular hourly rate for all hours worked in excess of 40 hours per workweek.

122. Defendants' decision not to pay overtime was willful.

123. Plaintiffs and the FLSA Collective seek damages in the amount of their unpaid overtime compensation, liquidated damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and such other legal equitable relief as this court deems just and proper.

**THIRD CAUSE OF ACTION**
**New Jersey Wage and Hour Law – Unpaid Overtime Wages**
**(On Behalf of Plaintiff and the Class)**

124. Plaintiff and the Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

125. At all times relevant, Plaintiff and the Class have been employees of Defendants, and Defendants have been the employer of Plaintiff and the Class within the meaning of the NJWHL and the supporting New Jersey Department of Labor Regulations.

126. At all times relevant, Plaintiff and the Class were covered by the NJWHL.

127. At all times relevant, Defendants were responsible for paying overtime wages to Plaintiff and the Class for each hour worked in excess of 40 in a week at a rate of time and one-half their regular rate of pay.

128. At all times relevant, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiff and the Class at one and one-half their regular rate of pay.

129. Defendants failed to pay Plaintiff and the Class the overtime wages to which they were entitled under the NJWHL and the supporting New Jersey Department of Labor Regulations.

130. Defendants' failure to pay required overtime was willful.

131. Through their knowledge and intentional failure to pay overtime wages to Plaintiff and the Class, Defendants have willfully violated the NJWHL, N.J.S.A. §34:11-56(a), *et seq*. and the supporting New York State Department of Labor Regulations.

132. Due to Defendants' willful violations of the NJWHL, Plaintiff and the Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest as provided by the NJWHL.

**FOURTH CAUSE OF ACTION**
**New Jersey Wage Payment Law – Failure to Pay Earned Wages**
**(On Behalf of Plaintiff and the Class)**

133. Plaintiff and the Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

134. NJWPL § 34:11-4.2 *et seq*. requires employers to pay the full amount of wages due to employees at least twice during each calendar month, on regular pay days that are designated in advance by the employer.

135. Defendants are employers within the meaning of the NJWP and Plaintiff and the Class are employees within the meaning of the NJWPL.

136. Plaintiff and the Class consistently worked more than 40 hours per week, and thus, were entitled to overtime pay.

137. Defendants did not pay Plaintiff and the Class the full amount of wages due to them each pay period.

138. Overtime pay is part of Plaintiff's and the Class's "wages" and therefore, in violation of Wage Payment Law N.J.S.A. 34:11-4.2, Defendant failed to pay Plaintiff's and the Class's full amount of wages due on regular pay days, as they were required.

139. Defendant's actions in failing to pay Plaintiff and the Class their earned wages were willful and not based on any good faith belief and were in violation of the New Jersey Wage Payment Law N.J.S.A. 34:11-4.10. Plaintiff and the Class are entitled to full payment for all wages due to them that were not paid.

140. As a result of Defendants' NJWPL violations, Plaintiff and the Class are entitled to recover from Defendants unpaid overtime wages and liquidated damages, as well as reasonable

attorneys' fees and the costs of this action, including interest, pursuant to the NJWPL's wage payment provisions.

**FIFTH CAUSE OF ACTION**
**Sexual Harassment and Hostile Work Environment**
**(New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 Et Seq.)**
**(On behalf of Plaintiff)**

141. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

142. Plaintiff was subjected to unwelcome sexual advances, inappropriate touching, and was required to engage in alcohol consumption with patrons as a condition of employment.

143. Plaintiff reported instances of harassment to management, including Defendant R. Guzman, who failed to act.

144. Defendants operated an exploitative business model targeting undocumented and vulnerable women, creating a workplace permeated with hostility and intimidation.

145. Defendants' conduct constitutes sexual harassment and a hostile work environment under the New Jersey Law Against Discrimination (N.J.S.A. 10:5-1 et seq.).

146. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer severe emotional distress, loss of income, psychological harm, and other damages.

**SIXTH CAUSE OF ACTION**
**Constructive Discharge**
**(NJLAD – N.J.S.A. 10:5-12)**
**(On behalf of Plaintiff)**

147. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

148. As a result of Defendants' persistent failure to remedy ongoing sexual harassment, provide a safe work environment, and protect Plaintiff from retaliation, Plaintiff was left with no reasonable alternative but to resign from her position.

149. The working conditions were so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign, constituting constructive discharge under N.J.S.A. 10:5-12.

150. Plaintiff is entitled to compensatory damages for back pay, front pay, emotional distress, punitive damages, and any other relief the Court deems just and proper.

**SEVENTH CAUSE OF ACTION**
**Negligence And Premises Liability**
**(New Jersey Common Law and N.J.S.A. 2A:22A-1 et seq. – Dram Shop Act)**
**(On behalf of Plaintiff)**

151. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

152. Defendants owed Plaintiff and Class Members a duty of reasonable care to maintain a safe work environment, including the obligation to:

i. Ensure patrons did not endanger employees through harassment, intoxication, or criminal acts;

ii. Properly supervise the service and consumption of alcohol;

iii. Protect employees from foreseeable harm resulting from excessive alcohol use and unsafe workplace conditions.

iv. Defendants breached this duty by:

v. Encouraging and incentivizing employees to consume alcohol with patrons to earn wages;

vi. Failing to intervene or supervise when employees were visibly intoxicated;

vii. Permitting known patrons to engage in threatening, harassing, and ultimately criminal behavior;

viii. Ignoring clear risks of harm, including signs of drugging or intoxication.

153. These breaches foreseeably and proximately caused Plaintiff's physical and psychological injuries.

154. Defendants' conduct also gives rise to liability under the New Jersey Licensed Alcoholic Beverage Server Fair Liability Act (Dram Shop Act), N.J.S.A. 2A:22A-1 et seq., for overservice and unsafe practices related to alcohol.

155. Plaintiff seeks damages for physical injuries, emotional trauma, medical expenses, and all other damages available under law.

## EIGHTH CAUSE OF ACTION
**Intentional Or Negligent Infliction of Emotional Distress**
**New Jersey Common Law**
**(On behalf of Plaintiff)**

156. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

157. Defendants engaged in extreme and outrageous conduct, including but not limited to:

i. Failing to act on reports of sexual harassment and assault;

ii. Encouraging Plaintiff to consume large amounts of alcohol to earn basic wages;

iii. Ignoring clear signs of intoxication and employee vulnerability;

158. Failing to provide support or intervention after Plaintiff was drugged, sexually assaulted, and hospitalized.

159. Alternatively, Defendants acted with gross negligence or reckless indifference to Plaintiff's physical and emotional safety.

160. As a result, Plaintiff suffered severe emotional distress, trauma, anxiety, and psychological harm that required ongoing professional care.

161. Defendants are liable under New Jersey law for both intentional infliction of emotional distress (IIED) and, alternatively, negligent infliction of emotional distress (NIED), and Plaintiff seeks compensatory and punitive damages accordingly.

**PRAYER FOR RELIEF**

162. **WHEREFORE**, Plaintiff prays for the entry of an order and judgment against the Defendants as follows:

(a) Designation of this action as a collective action on behalf of the FLSA Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

(b) Certification of this action as class action pursuant to Rule 23 of the FRCP and appointing the named Plaintiff and her counsel to represent the putative Class;

(c) Damages for the unpaid overtime wages due to Plaintiff and the FLSA Collective, in an amount to be determined at the trial of the action, liquidated damages as provided by the FLSA, interest, attorneys' fees, and the costs of the action;

(d) Damages for the unpaid overtime wages and notice damages due to Plaintiff and the putative Class, in an amount to be determined at the trial of the action, liquidated damages, interest, attorneys' fees, and the cost of the action as provided by the NJWHL and NJWPL.

(e) Compensatory damages for emotional distress, pain and suffering, humiliation, and mental anguish resulting from Defendants' violations of the New Jersey Law Against Discrimination, negligence, and negligent supervision;

(f) Damages for lost wages, including back pay and front pay, resulting from Plaintiff's discharge;

(g) Punitive damages as permitted under the NJLAD for Defendants' willful and egregious conduct;

(h) An award for all hospital and medical expenses incurred by Plaintiff as a result of the assault and Defendants' failure to provide any support or assistance;

(i) For pre-judgment and post-judgment interest on the foregoing amounts;

(j) For the costs and disbursements of this action, including attorneys' fees; and

(k) For such other further and different relief as this Court deems just and proper.

Dated: August 25, 2025
New York, New York

Respectfully submitted,

*/s Jacob Aronauer*
Jacob Aronauer
250 Broadway, Suite 600
New York, NY 10007
(212) 323-6980
jaronauer@aronauerlaw.com